V. S. KETCHUM ET AL., Appellants, *v.* HELEN STEARNS ET AL., Respondents.

### November 18, 1879.

1. That the seal spoken of in the *testatum* clause of a properly witnessed will is not in fact affixed, does not show that the testator considered the will not fully executed when he signed it, and does not invalidate the will.

2. Certain testimony declared to have no tendency to show undue influence.

APPEAL from the St. Louis Circuit Court.

*Affirmed.*

MARSHALL & BARCLAY, for the apppellants : The will was never formally executed according to the intention of the testator. — *Avery v. Pixley*, 4 Mass. 460 ; *Main v. Ryder*, 84 Pa. St. 219 ; *McBride v. McBride*, 26 Gratt. 484 ; *Catlett v. Catlett*, 55 Mo. 330 ; *Re Maddock*, 30 L. T. (N. S.) 696. Concerning the exclusion of evidence tending to show undue influence. — 2 Greenl. on Ev., sect. 688 ; *Pierce v. Pierce*, 3 Cent. L. J. 225 ; *Main v. Ryder*, 84 Pa. St. 219 ; *Mueller v. Hospital*, 5 Mo. App. 390 ; *Moross v. Cicotte*, 12 Mich. 461 ; *Reynolds v. Adams*, 8 Cent. L. J. 437 ; *Doe v. Hardy*, 1 Moo. & R. 525 ; 1 Redf. on Wills, 515, sect. 14.

CLINE, JAMISON & DAY, for the respondents : The testimony offered did not tend to show undue influence, and was properly excluded. — *Gibson v. Gibson*, 24 Mo. 227 ; *Cawthorne v. Hays*, 24 Mo. 237 ; *Spoonemore v. Cables*, 66 Mo. 579. No evidence showing undue influence having been offered, the case was properly taken from the jury. — *Nolan v. Shickle*, 3 Mo. App. 300 ; *Schmidt v. Harkness*, 3 Mo. App. 585 ; *Lange v. Lycoming Ins. Co.*, 3 Mo. App. 591.

LEWIS, P. J., delivered the opinion of the court.

Issue is taken in this cause on the alleged last will and testament of Solomon P. Ketchum. The paper concludes thus : " In testimony whereof, I, the said Solomon P. Ketchum, have to this, my last will and testament, contained on one sheet of paper, I have subscribed my name and affixed my seal this tenth day of August, in the year of Lord one thousand eight hundred and sixty-six.

" SOLOMON P. KETCHUM."

No seal or scrawl is appended to the signature. Plaintiff's counsel argue that, although a seal is not necessary to the authentication of a will, yet, when the testator has signified his purpose to affix a seal, this shows an intention that the execution should not be complete without it. Hence, in this case, the will was never fully executed.

The question depends not so much upon the particular act or acts which the testator considered appropriate to the execution of his last will, as upon the fact that he did, or did not, consider it fully executed when his last touch was applied. As to this fact, the statement in the instrument of an intention to affix a seal is not conclusive. It is a circumstance entitled to more or less weight, as it may be affected by other facts shown in evidence. It sinks into insignificance in presence of the testator's declaration, upon signing his name in the presence of witnesses, that this is his last will and testament, duly executed and published. In a case where a will was written on several sheets of paper, the *testimonium* at the end referred to the preceding sheets as subscribed by the testator. The sheets were, in fact, not signed. This was held not to affect the validity of the will, as the testator evidently intended the signing of the last sheet to apply to the whole. *Winsor* v. *Pratt*, 2 Brod. & B. 650. It has been held, in cases where the testator, having signed in one place, yet contemplated another signature, which he never made, that the will should be considered unsigned. But " the reasoning," as is remarked by Jarman, " seems only to

apply where the intention of repeating the signature remained to the last unchanged; for a name originally written with such design might afterwards be adopted by a testator as the final signature; and such, it is probable, would be the presumed intention if the testator acknowledged the instrument as his will to the attesting witnesses, without alluding to any further signing." 1 Jar. on Wills (2d Am. ed.), 113. The principle applies equally to an intended sealing, which was never consummated. In this case, the attesting witnesses certified that the testator, in their presence, " signed, sealed, published, and declared " the instrument in controversy " as and for his last will and testament." They confirmed their attestation by their testimony as witnesses on the trial. It does not appear that the testator, in publishing his will, made any reference to a future sealing. There can be no question that the authentication was final, in so far as the testator was concerned. In the cases cited by the plaintiff's counsel there is nothing antagonistic with these conclusions. In *Main* v. *Ryder*, 84 Pa. St. 217, the point considered was, as to the effect of the testator's failure to put his mark to the signature written for him, where it appeared that such was his intent in the final act of signing and publishing. The assumed parallel fails. In the present case, it does not appear that the testator, in the final act of publication, in presence of witnesses, intended to do anything more than he had already done. The will was written by the testator at his home, and was afterwards taken by him to the office of a real-estate agent for signature and attestation.

The testator had been married twice. The will gave to the plaintiffs, who were the children of his first wife, one dollar each, and to the defendant Sarah M. Ketchum, his second wife, for the term of her natural life, with certain conditions annexed, and with remainder to her children by him begotten, all the residue of his estate. The plaintiffs claim that the testator was induced to make this disposition

of his property by the undue influence which the defendant Sarah M. Ketchum exercised over him, and that therefore the instrument propounded was not his will.

A number of witnesses were introduced for the defence, who testified generally to the effect that they had been intimately acquainted with the testator for many years, and until the time of his death ; that he was a man of much intelligence, of a firmness nearly allied to obstinacy, positive in his convictions, and not easily influenced by any person. No witness, on either side, testified directly that he was subject to any influence of his wife, or in any degree whatever under her control. The plaintiffs sought to raise a presumption of undue influence affecting the execution of the will, by proofs of the relations existing between the testator and his second wife before their marriage, which was about eleven years before the making of the will ; by testimony showing the dependent condition of the disinherited children ; by showing that the testator had had difficulties with his first wife, and had separated from her, and that some of the disinherited children had taken sides with their father in those controversies ; by showing that the relations between the testator and his disinherited children were friendly and affectionate about the time of the making of the will ; by showing that some of the first wife's children had assisted the testator in accumulating property ; and by proving some conversation of the testator, in the same year in which the will was made, concerning his intended disposition of his property. There was also an offer to prove that one of the testator's daughters by his first wife had been obliged to leave her father's house, by reason of his second wife's request or influence to that effect. All the offers of testimony upon these matters were, upon defendants' objections, refused by the court, and these refusals are assigned for error.

We can discover no ground of admissibility for any of this proposed testimony. The plaintiffs have undertaken to

prove that the paper purporting to be the last will and testament of their ancestor was the product of an undue influence exercised upon him by Sarah M. Ketchum. "Undue influence is that which compels a testator to do that which is against his will, through fear, through the desire of peace, or some coercive power which he is unable to resist, and but for the exercise of which the will would not have been made as it was." *Pierce* v. *Pierce*, 3 Cent. L. J. 226. The testator was married to his second wife in 1855. His will was executed in 1866, and he died in 1877. Here is a period of more than twenty years, at some time during which these incidents of remote bearing, or none at all, are supposed to have indicated that the testator, in the hour when his will was written and signed, was acting under the coercive power above described, and that this coercive power was in fact held over him by Sarah M. Ketchum. Cause and effect are here far too widely separated for the purposes of fair investigation. All, or any of the facts tendered, might or might not coexist with a total absence of any such undue influence. They prove, or tend to prove, upon the question at issue, absolutely nothing. Their only effect, if introduced in evidence, might be, in the hands of ingenious counsel, to play upon the passions or prejudices of a jury, and give them an apparent excuse for thwarting the unkind discrimination of a father against some of his children.

Where there is direct proof of an undue influence and control held by one person over another, such facts as some of those here offered might be admissible, as illustrating the degree of its intensity, or its duration. But in this case there was absolutely no such foundation laid. The only direct testimony on the subject was to a contrary effect. Mrs. Ketchum testified that she was away from home when the will was made, and never saw it, or knew its contents, until after the testator's death. She also said that she never, at any time, mentioned the subject of a will to him, and that when, on one or two occasions, he made some al-

lusion to it, she entreated him not to talk about it at all. All the witnesses who had known the testator testified that he was one of the men least apt to be influenced by anybody, and that he was singularly independent in matters of judgment. One witness testified that he told her, about the time of the execution of the will, that he had cut off the children of his first wife, because he had already given them more than he now had to give to the others. The will was not prepared or executed *in extremis*. The testator was in his usual physical condition while attending to his affairs, prepared the will with his own hand, afterwards consulted counsel as to its formal sufficiency, and then kept it carefully in his own exclusive custody for eleven years, up to the time of his death. There was nothing in the whole case whereon to base the instructions asked for by the plaintiffs upon the subject of undue influence as affecting the validity of the will.

The verdict sustained the will, and we cannot find in the record any erroneous ruling which could have contributed to that result. The judgment is affirmed. All the judges concur.